**Jimmy J. VAUGHN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9316.**

District of Columbia Court of Appeals.

Argued Aug. 17, 1976.

Decided Oct. 8, 1976.

Linda Kay Davis, Washington, D. C., appointed by this court, for appellant.

Andrea L. Harnett, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Albert H. Turkus, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Donald E. Robinson, Jr., Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from a jury conviction for one count of robbery.[1] Appellant does not deny that he committed the act, but contends that (1) he was improperly denied the opportunity to present his intoxication defense, and (2) he was improperly denied a new trial on the basis of newly discovered evidence. For the reasons set forth in this opinion, we affirm the conviction.

This case arose out of an April 26, 1974, robbery of a cab driver in Washington, D. C., by appellant and Charles Carter. Carter had pled guilty to the offense, was sentenced, and was serving his time when called as a witness for appellant. Appellant contends that his purpose in calling Carter as a witness was to establish that he, appellant, was too intoxicated at the time of the robbery to form the requisite specific intent necessary for a robbery conviction, and thus could only be found guilty of the crime of simple assault. Appellant failed to obtain Carter's testimony

due, he asserts, to the court's alleged ruling as to Carter's Fifth Amendment privilege. Appellant contends that Carter was not entitled to plead the Fifth Amendment since he had previously pled guilty to the robbery arising out of these facts and had testified about his participation in it. Appellant argues that he was thereby denied his Sixth Amendment right of compulsory process for obtaining a witness essential to his defense.

The record indicates that appellant called Carter as his third witness, at which time appellant's trial counsel indicated to the court:

Your Honor, I am going to inquire about his [Carter's] participation in the offense. He's already plead [sic] guilty and he is serving time. So, we shouldn't have a Fifth Amendment problem here. And I just wanted to advise the Court.

The court informed Carter that, "you have a right under the Fifth Amendment, not to testify in this case because if you say anything that might incriminate you . . . it can . . . be used against you." After inquiry Carter said he would testify nonetheless whereupon the court appointed an attorney to advise Carter further about his rights. The government advised the court, in the presence of Carter and appellant's trial counsel, that Carter had been placed under oath and cross-examined at the time he pled guilty to this robbery. Thus Carter faced possible perjury prosecution should his in-court testimony differ from the testimony obtained at the guilty plea stage.[2]

This exchange prompted appellant's trial counsel who had not known that Carter's guilty plea had been taken under oath, to tell the court that there was still a possibility that Carter might not testify, but that she was "at this time contemplating calling

1. D.C.Code 1973, § 22–2901.

2. The future in-court testimony presumably would be truthful and thus the perjury prose-

cution would be based on any false swearing at the time the guilty plea was taken. *See* McCormick on Evidence § 139, at 294 (2d ed. 1972).

him." Her concern was that the prior under oath statement

> may very well contain information which if I put Mr. Carter on the stand, could be used to impeach Mr. Carter on cross-examination. In other words, I'm saying, that inasmuch as I do not have that information available that I, too, cannot decide whether or not I even want to call Mr. Carter as a witness.

After consulting with court-appointed counsel, Carter was asked if he wished to follow his attorney's advice which was to "take the Fifth Amendment" because he (Carter) could not remember what he had previously said under oath. In an exchange, after Carter indicated he would take the Fifth Amendment if called to testify, the court repeated:

> THE COURT: You wish to take his advice and you would invoke the Fifth Amendment if you were called to testify in this case?
>
> MR. CARTER: Yeah.
>
> THE COURT: . . . All right, I would think it would be a fruitless act to call him before the jury.
>
> [DEFENSE COUNSEL]: No, and I wouldn't want to do that.
>
> THE COURT: To hear him just take the oath. [*Sic.*]

It was not until the court (1) refused to give a jury instruction regarding the intoxication defense (because no direct evidence regarding intoxication was presented), and (2) limited appellant's closing argument regarding intoxication to direct evidence, that the Carter/Fifth Amendment episode was discussed again. Appellant's trial counsel proffered that Carter would have testified on the intoxication issue, but that his "unavailability" prevented going ahead with that defense. Counsel had never protested Carter's right to take the Fifth Amendment and did not compel him to take the stand. Nor did appellant's trial counsel urge further inquiry by the trial judge into the availability of the privilege.

■ A witness has a Fifth Amendment privilege to decline to answer incriminating questions, but a witness does not have the broader Fifth Amendment right that an accused has to decline even to take the stand. *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976); *United States v. Benjamin*, 120 F.2d 521, 522 (2d Cir. 1941); 8 Wigmore on Evidence § 2268, at 402–03 (McNaughton rev. 1961). Once on the stand, it is for the judge (not the witness nor the defendant nor trial counsel) to decide whether a witness can properly claim a Fifth Amendment privilege. *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). A "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Id.* at 486, 71 S.Ct. at 818.

■ The trial judge has the opportunity to pass on the availability of the privilege only when the witness is sworn and invokes the privilege in response to specific questions. *United States v. Harmon*, 339 F.2d 354, 359 (6th Cir. 1964), *cert. denied*, 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963 (1965), and it is at that time that the trial judge must measure the claimed privilege against the traditional criteria of whether the witness has reasonable cause to apprehend danger from a direct answer to the question. *Hoffman v. United States, supra*, 341 U.S. at 486–87, 71 S.Ct. 814; *Brown v. Walker*, 161 U.S. 591, 599–601, 16 S.Ct. 644, 40 L.Ed. 819 (1896); *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

■ We need not go into how active a role the trial judge should have played had Carter claimed a privilege in response to specific questions from appellant's trial

counsel because trial counsel cut short any inquiry by the trial judge by accepting Carter's decision to claim the Fifth Amendment if called to testify and by deciding, for whatever reason,[3] not to call Carter. *See United States v. Domenech*, 476 F.2d 1229, 1231 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973), where the court found the claim of privilege well-taken but expressed a "doubt . . . whether appellant is in a position to complain since his counsel neither asked the judge to direct [the witness] to answer questions or to rule that the privilege was improperly asserted." *See generally Hoffman v. United States, supra*, 341 U.S. at 486–87, 71 S.Ct. 814; 8 Wigmore on Evidence §§ 2260, 2271 (McNaughton rev. 1961); McCormick on Evidence § 139 (2d ed. 1972). Appellant cannot now argue that he was denied his Sixth Amendment right of compulsory process for obtaining witnesses in his favor because his own counsel chose to accept without challenge Carter's asserted intention to invoke a Fifth Amendment privilege.

■ Appellant also argues that the trial court improperly denied his motion for a *new trial which was requested on the* ground of newly discovered evidence.[4]

The newly discovered evidence urged on the trial court was a transcript of Carter's testimony when he pled guilty to the robbery. Appellant points out that the transcript did not in fact contain any reference to appellant's intoxication, so Carter could not have incriminated himself in response to questions about appellant's intoxication.[5]

However, the transcript which formed the basis for the motion could not satisfy the requirement of newly discovered evidence since its existence was known at the time of trial and was mentioned when Carter's proposed testimony was being discussed. *See Williams v. United States*, D.C.App., 295 A.2d 503, 505 (1972). Furthermore, we cannot say appellant's trial counsel showed due diligence in attempting to secure the transcript at trial. In fact, appellant's trial counsel indicated to the court that she was "not . . . asking for an order" to compel production of the transcript. *Heard v. United States*, D.C. App., 245 A.2d 125, 126 (1968).

Accordingly, we do not find that the trial judge abused her discretion[6] in denying the new trial motion, and appellant's conviction is

*Affirmed.*

---

3. The record suggests a concern over impeachment of Carter by his previous statement and thus lends some credence to the government's contention that not calling Carter was as much a trial tactic as a reaction to any possible Fifth Amendment privilege.

4. Appellant also argues in his brief that the new trial motion was one requested in the "interests of justice", Super.Ct.Cr.R. 33, because appellant filed a motion to extend the filing time for the motion. Such an extension would not have been necessary for a "newly discovered evidence" motion which can be filed any time within two years of judgment. Yet, in response to the trial court's question, "You are asking for a new trial on the basis of new evidence[?]", appellant's trial counsel answered "yes". We agree and fail to

see how an apparently unnecessary motion to extend time can change the character of the underlying motion. In any event the record here does not support a contention that the trial court abused its discretion in denying the motion.

5. Without the testimony of this witness, there is little, if anything, to suggest intoxication to the degree necessary for such a defense. There is evidence to indicate appellant was mentally alert and rational. There is no explanation as to the failure of Carter's brother to testify although he had been present during the initial stages of this occurrence.

6. *Williams v. United States, supra*; *O'Bryant v. District of Columbia*, D.C.App., 223 A.2d 799, 801 (1966).